## Chandler v. Eversole.

(Decided October 10, 1930.)

H. C. CLAY for appellant.

WILLIAM LEWIS for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

This is the second appeal of this case. As stated in the opinion on the first appeal, 217 Ky. 148, 289 S. W. 215, this was an action brought by Abner Eversole against Charles Chandler and G. S. Brock to recover damages for deceit in the sale of 50 shares of the capital stock of the Harlan Block Coal Company. The action was based on the theory that Chandler and Brock sold appellant the stock and that the sale was induced by fraudulent representations which they made as to the financial and physical condition of the company. On the first trial, Brock went out on a peremptory instruction and the jury returned a verdict in favor of Chandler. On appeal by Eversole, the judgment was affirmed as to

Brock but was reversed as to Chandler because of error in the trial court in admitting and rejecting certain evidence. On the return of the case, it was tried again, and this time Eversole recovered a verdict against Chandler in the sum of $1,250 and interest, and the latter appeals.

To reverse the judgment, appellant argues that he was entitled to a peremptory instruction at the close of the whole case, but that if in error as to this, he was at least entitled to a new trial on the ground that the verdict against him was flagrantly against the evidence. The two grounds may be considered together.

The Harlan Block Coal Company was organized just before the flush times in the coal industry caused by the war came to an end. When they did, the Harlan Block Coal Company no longer prospered. Senator N. U. Bond owned 50 shares of its capital stock of which he was very anxious to dispose. Chandler was secretary of the company. He and Bond, together with others, were indorsers on notes of the company held by certain local banks to the extent of some $5,000 or $6,000. The evidence for Eversole is to the effect that in March 1919, Chandler and Brock came to the grocery store which he and T. A. Porter were running as partners and informed them both that they had Bond's stock for sale and would like to sell it to them. Chandler denies that he was present on this occasion. Having thus interested Eversole and Porter, Chandler and Brock arranged for a meeting that night to discuss the matter of the purchase of this stock, and it was agreed that Chandler should be there, as he alone knew fully the financial and physical condition of the company. Chandler denies that he took any part in getting up this meeting, but admits that he was there. The meeting took place and Chandler was there. He does not deny that he informed the company assembled as to the financial and physical condition of the company, but he insists that he did not misrepresent the true state of affairs, whereas if the testimony of Eversole and his witnesses is to be believed, Chandler certainly did not truly represent at least the financial condition of the company. It was then some $20,000 in debt. Eversole and his witnesses say that Chandler represented that it owed only $5,000 or $6,000. Chandler denies that he said this was all the company owed. Obviously this was an issue of fact for the jury to determine. It is con-

498

ceded that all the parties present agreed that if Eversole and his friends bought the stock, the money which Eversole and others were to pay for it was to be used by the company in paying its debts. Indeed, it may be said that when the checks were given for this stock the next day they were at once used in paying off the bank loans of the company upon which Bond, Chandler, and others were sureties. Eversole's testimony is further to the effect that he bought this stock on the day following this night meeting and that he did so relying on the representations that had been made to him by Chandler. Chandler introduced proof to show that he had nothing to do with the sale of Senator Bond's stock; that in fact Eversole had purchased this stock before the night meeting which was arranged only for the purpose of reorganizing the company and electing new officers; and that he made no representations for the purpose of inducing Eversole or any one to buy this stock. It is admitted that a month after Eversole bought this stock the company, which had been unable to operate in the meantime, was thrown into bankruptcy, all of its assets sold for about $3,000, and that its creditors received but a small percentage of their claims, the stockholders getting nothing. From this resume of the evidence, it is plain that while there was contradiction in it and the theories of Eversole and Chandler were diametrically opposed, yet it presents just a case as requires submission to a jury for determination. Chandler was not entitled to a peremptory instruction, and it cannot be said that the verdict in favor of Eversole was flagrantly against the evidence.

The judgment is therefore affirmed.